UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RAYMOND ROLES,<br><br>              Plaintiff,<br><br>v.<br><br>MELODEE ARMFIELD,<br><br>              Defendant. | Case No. 1:12-cv-00363-CWD<br><br>**INITIAL REVIEW ORDER** |

Raymond Roles' Prisoner Complaint has been conditionally filed by the Clerk of Court due to his status as an inmate and his request for in forma pauperis status. The Court now reviews Plaintiff's Complaint to determine whether it is subject to summary dismissal under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, the Court enters the following Order.

## BACKGROUND

Plaintiff, an inmate at the Idaho Correctional Center, was involved in an altercation with another inmate on April 20, 2010, after the other inmate came into Plaintiff's cell uninvited. (Complaint, Dkt. 3, Appendix, p. 1.) The two men started to argue, and Plaintiff struck the inmate on the left side of his jaw with a pencil, which broke in half. (*Id.*) They then exchanged punches and wrestled on the floor until correctional officers

arrived and stopped the fight. (*Id.*)

Based on this altercation, Plaintiff was charged with "aggravated battery" in a prison disciplinary offense report (a "DOR"). (Dkt. 3, Appendix, p. 1.) At his disciplinary hearing, he argued that he was acting in self-defense, but the Disciplinary Hearing Officer, Melodee Armfield, found Plaintiff guilty and imposed 17 days of detention as punishment. (Dkt. 3, Appendix p. 1, "Attached Exhausted Remedies," p. 1.) Plaintiff appealed, arguing that Armfield prevented him from claiming self-defense under Idaho law, but his appeal was denied. (*Id.*)

As a result of this DOR, which was the first one Plaintiff had received in 15 years, the Idaho Commission of Pardons and Parole declined to grant him parole and instead determined that another hearing would not be held for five years. (Dkt. 3, p. 2.) Plaintiff also alleges that his security level has been increased and that he was moved into close custody, where he is locked down 22 to 23 hours a day. (Dkt. 3, "Attached Exhausted Remedies," p.5.)

In his Complaint, brought under 42 U.S.C. § 1983, Plaintiff alleges primarily that Armfield's "refusal" to allow him to rely on self-defense as a valid defense to the DOR deprived him of his rights under the 14th Amendment. (Dkt. 3, p. 2.)

## STANDARD OF LAW

The Court is required to review complaints filed in forma pauperis or those filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate and must

**INITIAL REVIEW ORDER - 2**

dismiss a complaint or any portion thereof that states a claim that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). A complaint should also be dismissed under Rule 8 of the Federal Rules of Civil Procedure if the factual assertions in the Complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged."*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

## DISCUSSION

Plaintiff contends that his constitutional rights were violated because he was allegedly prevented from claiming self-defense in his prison disciplinary proceeding. (Dkt. 3, p. 2.) For the reasons that follow, the Court concludes that Plaintiff has failed to state a claim on which relief may be granted on the self-defense theory, but he may proceed with a more limited due process claim that "some evidence" did not support the DOR.

1. **Fourteenth Amendment – Self-Defense**

Because Plaintiff asserts that Defendant Armfield's "refusal" to allow him to claim

**INITIAL REVIEW ORDER - 3**

self-defense deprived him of a state created liberty interest that he had under Idaho statute, his claim falls primarily under the Due Process Clause of the Fourteenth Amendment. The right to due process of law prohibits the government from depriving an individual of life, liberty, or property without following the proper procedures for doing so. *Wolff v. McDonnell*, 418 U.S. 539, 558-66 (1974). In the prison setting, however, a prisoner can establish a liberty interest that implicates the Due Process Clause only if he can show that state officials or employees take took actions that either affected his sentence in an unexpected manner or imposed a hardship that is "atypical and significant in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

Here, Plaintiff contends that in addition to the 17 days of detention that he was required to served as punishment for the aggravated battery DOR, the Idaho Commission of Pardons and Parole has since denied parole to him and he has been moved to a much more restrictive housing assignment, apparently indefinitely. The Court will assume, for present purposes, that he has suffered an atypical and significant hardship, meaning that the disciplinary charge implicated a liberty interest and that he was entitled to protection under the Due Process Clause during the disciplinary hearing.

Even when a liberty interest is at stake, prisoners are not entitled to receive the full panoply of rights in a disciplinary hearing that is due a defendant in a criminal matter. *Wolff*, 418 U.S. at 558-66. They are instead guaranteed only minimal process, which includes: (1) advance written notice of the disciplinary charge; (2) an opportunity to call

**INITIAL REVIEW ORDER - 4**

witnesses and to present documentary evidence in defense of the charges, and (3) a written statement from the fact finders as to the evidence relied on and the reason for the disciplinary action taken. *Id.* at 563–65. Plaintiff does not contend that he was deprived of these minimal procedures. Instead, he asserts that his inability to rely on Idaho's statutory right of self-defense deprived him of a federal constitutional right. In this, he is mistaken.

The Supreme Court has never held that the Constitution requires that all defenses available to a defendant in a criminal prosecution must be available to a prisoner in disciplinary proceedings, and *Wolff* suggests that they are not. The Ninth Circuit has noted, in dicta, that a prohibition on the right to raise self-defense in a disciplinary hearing would not violate a prisoner's due process rights. *MacMillan v. Pontesso*, 73 Fed. Appx. 213, 214 n.1 (9th Cir. 2003). Other courts have more directly addressed and rejected such a claim. *See Rowe v. DeBruyn*, 17 F.3d 1047, 1052-53 (7th Cir. 1994) ("prisoners do not have a fundamental right to self-defense in disciplinary proceedings"); *see also Williams v. Kort*, 223 Fed. Appx. 95, 100 (3d Cir. 2007) (agreeing with *Rowe* that prisoners do not have a constitutional right to self-defense); *cf. Kenney v. Barron*, 239 Fed. Appx. 494 (11th Cir. 2007) (holding that prison officials' failure to disclose a report concluding that inmate acted in self-defense did not violate inmate's due process rights).

An illustrative example is the Seventh Circuit's opinion in *Rowe*. There, the court held that "even a substantive due process right that has been clearly established in

**INITIAL REVIEW ORDER - 5**

Fourteenth Amendment criminal jurisprudence may not necessarily apply to prison inmates in disciplinary proceedings." 17 F.3d at 1052-53. In reaching this conclusion, the panel noted that courts owe prison administrators deference in implementing policies, and that "[a] right that threatens to undermine prison discipline by encouraging inmates to combat violence with more violence subverts a core prison function of ensuring order and safety within the institution." *Id*. at 1052-53. In a later case, the Seventh Circuit observed that it is "misguided" to suggest that a "statute creating a justification defense for defending one's self or another in the criminal context gives [an inmate] a substantive constitutional right" to use violence to defend himself in the context of prison disciplinary proceedings. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citation omitted).

This Court is persuaded by the Seventh Circuit's reasoning, and adopts its conclusion here. Prison administrators are entitled to significant deference in the day-to-day management of the institutions under their control, and prison disciplinary hearings serve different interests than criminal prosecutions. Unlike a defendant facing a criminal charge, a prisoner has already been convicted of a crime and is housed among others who have previously shown an inability to conform to society's rules. The risk of violence is high, and safety and security are of paramount concern. A prison rule that justifies a violent response to an initial aggressive act under the rubric of "self-defense" may undermine security and turn every DOR proceeding into a contested hearing on whether the prisoner's response was appropriate under the facts. Certainly a prisoner who is

**INITIAL REVIEW ORDER - 6**

charged criminally in state court as a result of a prison disturbance will have the right to defend against the charge on the basis of self-defense, if warranted, but there is no constitutional requirement that prison officials allow the defendant to claim the defense in an internal administrative disciplinary proceeding.

Plaintiff also attempts to latch on to a different constitutional theory – equal protection of the law – when he asserts that his inability to rely on the defense discriminated against him and deprived him of a fundamental right that is offered to Idaho citizens facing criminal charges. This claim is without merit. Plaintiff does not allege that he is a member of a "suspect class" that would entitle him to heightened scrutiny of IDOC or ICC policy, *see, e.g., Glauner v. Miller*, 184 F.3d 1053, 1054 (9th Cir. 1999) ("prisoners are not a suspect class"), and the Court has already determined that self-defense is not a fundamental constitutional right that is conferred on a prisoner in the disciplinary process. To the extent that IDOC or ICC policy may disallow self-defense as a reason to avoid disciplinary punishment, it is supported by a rational basis in discouraging the escalation of prison violence.

Finally, even if the defense was required under federal law, the Court would still find that Plaintiff has failed to state a claim on these facts. The allegations in the Complaint and the attached exhibits tend to show that, rather than refusing to allow Plaintiff to claim self-defense, Defendant Armfield apparently concluded that he did not act in self-defense. In responding to his initial appeal, she wrote:

**INITIAL REVIEW ORDER - 7**

> Other inmate in the situation did not have a weapon. You attacked with a weapon [and] attacked in such a manner that your intent was to cause great bodily injury up to and including death based on the area of the other [inmate's] body that you struck with the weapon.

(Dkt. 3, p. 6.) In other words, Armfield determined that Plaintiff was the initial aggressor who used force that was disproportionate to the threat, if any, that was presented to him. A finding that the facts did not support self-defense is not the same as prohibiting its consideration in the first place.

For these reasons, the Court concludes that Plaintiff has failed to state a claim on which relief may be granted under a constitutional self-defense theory.

## 2.     Fourteenth Amendment – Sufficiency of the Evidence

In addition to applying certain minimal procedural rights to the prison disciplinary process when a liberty interest is at stake, the Supreme Court has also held that a prisoner's disciplinary conviction must be supported by at least "some evidence." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." *Id*. at 455–56.

Although the bulk of Plaintiff's Complaint is focused on the self-defense theory, this Court has a duty to liberally construe pro se complaints to find colorable claims for relief where possible. *Bretz v. Kelman*, 773 F.2d 1026, 1027 (9th Cir. 1985). Under that lenient standard, the Court has construed Plaintiff's Complaint as also challenging the legitimacy of his DOR conviction under the some evidence standard.

**INITIAL REVIEW ORDER - 8**

Plaintiff was found guilty of committing "aggravated battery," which is a Class A violation under IDOC rules. (Dkt. 3, p. 20.) Aggravated battery is defined, in relevant part, as follows:

> [The] [w]illful and unlawful use of physical force, chemical, poison, weapon or other destructive substance upon another person that intentionally causes great bodily harm, permanent disability, or permanent disfigurement . . .

*See* IDOC Standard Operating Procedure 318.02.01.001, Appendix A.

The reporting officer set out the facts of the offense that Plaintiff was alleged to have committed against the other inmate:

> Inmate Roles, Raymond, 14482[,] was involved in a physical altercation in V pod in the area of cell 03. Inmate Roles was approached by another Inmate in cell 03 and the two began to argue. Inmate Roles stuck the other Inmate in the left side of his jaw with a pencil which broke during the incident. Inmate Roles began to argue with the other Inmate and the two then began to exchange punishes with closed fists and wrestled on the floor of the pod.

(Dkt. 3, p. 20.) Armfield elaborated on these facts when she responded to Plaintiff's appeal, writing that "[y]ou attacked with a weapon [and] attacked in such a manner that your *intent* was to cause great bodily injury up to and including death based on the area of the other inmates [sic] body that you struck with the weapon." (Dkt. 3, p. 6.) (Emphasis added.)

After applying the definition of aggravated battery in IDOC regulations to the facts alleged in Plaintiff's Complaint and its supporting exhibits, the Court finds that the Complaint sets forth a due process claim that evidence was insufficient to support the finding of guilt. While there appears to be more than sufficient evidence that Plaintiff

**INITIAL REVIEW ORDER - 9**

used both "physical force" and a "weapon," there is no current indication that the other inmate suffered "great bodily harm, permanent disability, or permanent disfigurement." IDOC Standard Operating Procedure 318.02.01.001, Appendix A (setting out the elements of aggravated battery). Armfield's emphasis on Plaintiff's *intent* to cause a severe injury would not be sufficient, by itself, to find him guilty of the offense defined in IDOC regulations.

Accordingly, Plaintiff will be permitted to proceed with his Complaint against Defendant Armfield, but limited to a theory that his due process rights were violated because his DOR was not supported by some evidence. The Court finds only that Plaintiff's Complaint states a colorable claim that survives initial screening, and it expresses no opinion on the ultimate merit of the claim. The "some evidence" standard is not a difficult one to meet, and Defendant may be able to come forward with evidence, not currently available to the Court, from which a factfinder could have reasonably concluded that Plaintiff caused great bodily harm, permanent disability, or disfigurement to the other inmate.[1]

## APPLICATION TO PROCEED IN FORMA PAUPERIS

For any litigant to file a civil complaint in federal court, that litigant must either pay the filing fee in full at the time of filing or seek in forma pauperis status, which

---

[1] In addition, Defendant may chose to file a motion to dismiss on procedural grounds. For instance, it appears that Plaintiff's Complaint may have been filed beyond the two-year statute of limitations, but the Court is unable to make a conclusive determination on that issue at this early screening stage.

**INITIAL REVIEW ORDER - 10**

allows the litigant to pay the filing fee over time. In either case, the litigant must pay the full filing fee for having filed the complaint, regardless of whether the litigant's case is eventually dismissed or is otherwise unsuccessful.

Plaintiff has filed an Application to Proceed in Forma Pauperis, supported by an affidavit of assets and a prison trust account statement. Based upon the foregoing statements of Plaintiff's current financial condition, the Court finds it appropriate to grant Plaintiff's Application, which allows Plaintiff to pay the filing fee over time according to the schedule set forth in 28 U.S.C. § 1915(b)(1).

Because the Court does not know the current balance of Plaintiff's account, it will waive payment of an initial partial filing fee. Plaintiff shall be required to make monthly payments of twenty (20) percent of the preceding month's income credited to his institutional account. The agency having custody of Plaintiff shall forward payments from his account to the Clerk of the Court each time the amount in the account exceeds ten (10) dollars, until the filing fees are paid in full.

## MOTION FOR APPOINTMENT OF COUNSEL

In his Complaint, Plaintiff has requested the assistance of counsel. Unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *Lassiter v. Dept. of Social Services*, 452 U.S. 18, 25 (1981). Whether a court appoints counsel for indigent litigants is within the court's discretion. *Wilborn v. Escalderon*, 789 F.2d 1328, 1330-31 (9th Cir. 1986).

**INITIAL REVIEW ORDER - 11**

In civil cases, counsel should be appointed only in "extraordinary cases." *Id*. at 1330. To determine whether extraordinary circumstances exist, the court should evaluate two factors: (1) the likelihood of success on the merits of the case, and (2) the ability of the plaintiff to articulate his claims pro se in light of the complexity of legal issues involved. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1990). Neither factor is dispositive, and both must be evaluated together. *Id*.

Applying the factors to this case, the Court finds that Plaintiff's Complaint, liberally construed, states a colorable claim that will not be dismissed at this screening stage. But without more than the bare allegations of the Complaint, it is presently impossible to determine the likelihood of Plaintiff's success on the merits. The Court also finds that Plaintiff has articulated his claims sufficiently, and that the legal issues are not complex in this matter. Based on the foregoing reasons the Court finds it appropriate to deny Plaintiff's Motion for Appointment of Counsel. If it seems appropriate at a later date in this litigation, the Court will reconsider appointing counsel.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Application to Proceed In Forma Pauperis (Dkt. 1) is **GRANTED**. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action, but he will not be assessed an initial partial filing fee at this time. A separate order directing prison officials to deduct monies from

        Plaintiff's prison trust account will issue.

2. Defendant shall be allowed to waive service of summons by executing, or having counsel execute, the Waiver of Service of Summons as provided by Federal Rule of Civil Procedure 4(d) and returning it to the Court within thirty (30) days. If Defendant chooses to return the Waiver of Service of Summons, the answer or pre-answer motion shall be due in accordance with Rule 12(a)(1)(A)(ii).

3. The Clerk of Court shall forward a copy of the Complaint (Dkt. 3), together with a copy of this Order and a Waiver of Service of Summons, to **(1) Kirt Naylor, Naylor & Hales, 950 W. Bannock, Ste. 610, Boise, ID  83702, on behalf of Defendant Armfield; and (2) Steve Groom, Deputy General Counsel, Corrections Corporation of America, 10 Burton Hills Boulevard, Nashville, TN 37215.**

4. Should any entity determine that the individuals for whom it was served are not, in fact, its employees or former employees, or that its attorney will not be appearing for particular former employees, it should notify the Court via the CM/ECF system, with a copy to Plaintiff.

5. The parties shall not engage in any discovery until an answer has been filed. Within 30 days after an answer has been filed, the parties shall provide each other with the following voluntary disclosures: all relevant information

pertaining to the claims and defenses in this case, including the names of individuals likely to have discoverable information, along with the subject of the information, as well as any relevant documents in their possession, in a redacted form if necessary for security or privilege purposes; and, if necessary, they shall provide a security/privilege log sufficiently describing any undisclosed relevant documents which are alleged to be subject to nondisclosure. Any party may request that the Court conduct an *in camera* review of withheld documents or information. If, instead of filing an answer, Defendants file a motion to dismiss under Federal Rule of Civil Procedure 12, disclosures and discovery shall be automatically stayed with the exception that Defendants shall submit with any motion to dismiss for failure to exhaust administrative remedies a copy of all grievance-related forms and correspondence, including a copy of original handwritten forms submitted by Plaintiff that either fall within the relevant time period or otherwise relate to the subject matter of a claim.

6. Discovery shall not be filed with the Clerk of Court, but shall be exchanged only between parties as provided in the Federal Rules of Civil Procedure. Motions to compel discovery shall not be filed unless the parties have first attempted to work out their disagreements among themselves.

7. Each party shall ensure that all documents filed with the Court are

**INITIAL REVIEW ORDER - 14**

simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party shall sign and attach a proper mailing certificate to each document filed with the Court, showing the manner of service, date of service, address of service, and name of the person upon whom service was made. The Court will not consider *ex parte* requests unless a motion may be heard *ex parte* according to the rules and the motion is clearly identified as requesting an *ex parte* order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("*Ex parte*" means that a party has provided a document to the Court but did not provide a copy of the document to the other party to the litigation.)

8. All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rules of Civil Procedure 7, 10, and 11 and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

9. No party may have more than three pending motions before the Court at one

**INITIAL REVIEW ORDER - 15**

time, and no party may file a motion on a subject matter if he or she has another motion on the same subject matter currently pending before the Court.

10. Plaintiff shall notify the Court immediately if his address changes. Failure to do so may be cause for dismissal of this case without further notice.



DATED: December 3, 2012

Honorable Candy W. Dale
United States Magistrate Judge

**INITIAL REVIEW ORDER - 16**